**EDCARE MANAGEMENT, INC., Appellant,**

v.

**Frank G. DELISI, Appellee.**

**No. 11–CV–1117.**

District of Columbia Court of Appeals.

Argued May 2, 2012.

Decided July 13, 2012.*

---

\* The decision in this case was originally issued as an unpublished Memorandum Opinion and Judgment. It is now being published upon the court's grant of appellee's motion to publish.

Barry S. Pollack, admitted pro hac vice by special leave of court, with whom Kevin M. Colmey was on the brief, for appellant.

Steven K. White, with whom Matthew Smilowitz, Washington, DC, was on the brief, for appellee.

Before OBERLY and EASTERLY, Associate Judges, and REID, Senior Judge.

OBERLY, Associate Judge:

Appellant, EDCare Management, Inc. ("EDCare"), appeals the trial court's entry of summary judgment in favor of appellee Frank DeLisi on its fraudulent misrepresentation claim. We affirm, holding that EDCare's claim is barred by res judicata as well as the rule stated in *Choharis v. State Farm Fire & Cas. Co.*, 961 A.2d 1080 (D.C.2008), that a breach of contract claim may not be recast as a tort claim.

## I. Facts

EDCare, an emergency-care management and administrative services agency, created a limited liability company, The Greater Southeast Community Emergency Physicians, LLC ("GSCEP"), to provide such services to Capitol Medical Center,

LLC ("CMC"), a hospital in Washington, D.C., whose CEO was Frank DeLisi.

In March 2008, CMC and GSCEP entered into an Agreement for Emergency Medical Services and Medical Director Services ("CMC Contract") in which GSCEP agreed to recruit and train a staff of local physicians to provide services at the hospital. Under the CMC Contract, GSCEP would be compensated by a monthly stipend from CMC as well as by the patients through their insurance providers and loans from EDCare. In February 2008, in anticipation of the CMC Contract, EDCare and GSCEP entered into a management services agreement ("Management Agreement") in which all of GSCEPs rights and obligations under the CMC Contract were assigned to EDCare.

In March 2009, the CEO of EDCare, Jeffrey Schillinger, who was also the CEO of GSCEP, notified DeLisi that CMC was in breach for failure to pay the invoiced stipend for the months of December 2008 and January 2009. DeLisi and Schillinger agreed that the contract would terminate on May 31, 2009, and CMC would make the remaining payments in a timely manner. In an email sent on May 29, 2009, a few days before the contract's termination date, DeLisi told Schillinger that "there is absolutely no reason to have concern regarding receiving payment in full for your services" and that he was "expecting the hospital to be successful in collecting the significant funds due us."

One year later, in March 2010, when CMC had failed to make the payments owed, GSCEP filed a demand for arbitration pursuant to the CMC Contract's arbitration clause, which provided that any contract disputes relating to the CMC Contract would be settled in arbitration. In the arbitration complaint, GSCEP brought claims for breach of agreement and tortious interference with contractual relations, alleging that DeLisi made misrepresentations to Schillinger about CMC's ability to pay the invoices. In December 2010, the arbitration panel issued a final decision, awarding liquidated damages to GSCEP on its breach of contract claim but rejecting its tortious interference claim.

On April 13, 2010, while the arbitration was still pending, EDCare filed a complaint against DeLisi in Superior Court, seeking to recover its out-of-pocket expenses suffered in reliance on DeLisi's allegedly fraudulent misrepresentations concerning CMC's ability to pay the debts owed under the CMC Contract. According to EDCare, DeLisi fraudulently induced EDCare to forego its right to terminate its obligations under the CMC Contract earlier than May 31, 2009. In his deposition, Schillinger admitted that had CMC made all the payments it owed to GSCEP, CMC would have "fulfilled its obligations" to EDCare and "we would not be sitting here today." Following discovery, DeLisi filed a motion for summary judgment and the trial court granted his motion, concluding that EDCare's claim was barred under the doctrine of res judicata as well as the rule stated in *Choharis*, that the fraudulent misrepresentation claim must exist independent of the contract.

## II. Discussion

This court "review[s] both the grant of summary judgment and the trial court's application of *res judicata* principles *de novo*." *AMEC Civil LLC v. Mitsubishi Int'l Corp.*, 940 A.2d 131, 133 (D.C. 2007). To prevail on summary judgment, a party "must demonstrate that there is no genuine issue of material fact and that she is entitled to judgment as a matter of law." *Murphy v. Schwankhaus*, 924 A.2d 988, 991 (D.C.2007). On appeal, we conduct

"an independent review of the record" and "apply[ ] the same substantive standard used by the trial court." *Id.*

EDCare argues that the trial court incorrectly applied res judicata to bar its claim against DeLisi by concluding that the parties to the arbitration (CMC and GSCEP) were in privity with the parties in this case (DeLisi and EDCare) and by failing to consider the arbitration panel's lack of authority to consider EDCare's fraud claim. EDCare also contends that *Choharis* does not apply because EDCare and DeLisi had no contractual relationship and its claim is based on DeLisi's "independent false statements" that caused ED-Care to forego its termination rights.

## A. Res Judicata

■ Under the doctrine of res judicata, "a final judgment on the merits of a claim bars relitigation in a subsequent proceeding of the same claim between the same parties or their privies." *Patton v. Klein*, 746 A.2d 866, 869 (D.C.1999). Res judicata bars not only claims that actually were litigated in the first action but "all issues arising out of the same cause of action" that could have been litigated. *Faulkner v. Government Emps. Ins. Co.*, 618 A.2d 181, 183 (D.C.1992). "If there is a common nucleus of facts, then the actions arise out of the same cause of action." *Patton*, 746 A.2d at 870 (internal quotation marks omitted). An arbitration award is considered a final judgment on the merits for purposes of res judicata. *See Schattner v. Girard, Inc.*, 668 F.2d 1366, 1368, 1371 (D.C.Cir.1981). Thus, a party whose claims have been—or should have been—decided in arbitration "may not then bring the same claims under new labels." *Hogue v. Hopper*, 728 A.2d 611, 614 (D.C.1999) (quoting *Schattner*, 668 F.2d at 1368). The issues we must determine, then, are: (1) whether EDCare and DeLisi are privies to the parties in the arbitration proceeding; and (2) whether EDCare's claim arises out of the same cause of action that was submitted in arbitration.

## 1. Privity

■ We have held that "[a] privy is one so identified in interest with a party to the former litigation that he or she represents precisely the same legal right in respect to the subject matter of the case." *Franco v. District of Columbia*, 3 A.3d 300, 305 (D.C. 2010) (internal quotation marks omitted). The Supreme Court recently categorized the recognized exceptions to the general rule that "one is not bound by a judgment *in personam* in a litigation in which he is not" a party. *Taylor v. Sturgell*, 553 U.S. 880, 881, 128 S.Ct. 2161, 171 L.Ed.2d 155 (2008) (internal quotation marks omitted); *see also Franco*, 3 A.3d at 305 (applying *Taylor's* categories of recognized exceptions). One exception justifies nonparty preclusion when there is a "pre-existing substantive legal relationship between the person to be bound and a party to the judgment." *Taylor*, 553 U.S. at 894, 128 S.Ct. 2161 (alteration and internal quotation marks omitted). The qualifying legal relationship relevant to the question whether EDCare is in privity with GSCEP is that of assignee and assignor. *Id.* The Management Agreement assigned GSCEP's rights and obligations under the CMC Contract to EDCare—GSCEP gave EDCare the obligation of administering and managing the CMC Contract, and it authorized EDCare to enforce its rights under the contract. As the trial court recognized, although "EDCare and GSCEP remained distinct and separate entities, ... under the Management [Agreement], EDCare had the right both to represent and to manage GSCEP." Therefore, as an assignee, EDCare is "so identified in interest" with GSCEP that it

"represents precisely the same legal right in respect to the subject matter of the case." *Franco*, 3 A.3d at 305 (internal quotation marks omitted).

 Likewise, DeLisi is in privity with CMC as CMC's agent acting within the scope of the principal-agency relationship. Although agents and principals are not ordinarily in privity with each other for purposes of res judicata, "a decision on the merits in an action against the principal is res judicata in a later action against the agent ... if the prior action concerned a matter within the agency." *Major v. Inner City Prop. Mgmt., Inc.*, 653 A.2d 379, 381 (D.C.1995) (internal quotation marks omitted). Neither party disputes that the representations made by DeLisi of which EDCare complains were made in his capacity as CEO of CMC and thus fall within the scope of his agency relationship. Because the prior arbitration involving CMC concerned these same statements that DeLisi made, he is in privity with CMC for the purposes of this action.

### 2. Arising out of the Same Cause of Action

The breach of contract claim that GSCEP brought in arbitration was based on the communications between DeLisi and Schillinger concerning payment of the past-due amounts and the ability to continue paying GSCEP its monthly stipend. In its arbitration complaint, GSCEP specifically complained about DeLisi's May 29th email assuring Schillinger that GSCEP would be paid for its services, claiming that CMC "acted in bad faith" by "intentionally misle[ading]" GSCEP. EDCare's fraudulent misrepresentation claim also is based on the May 29th email and DeLisi's assurances that EDCare would be paid for its services under the CMC Contract, and it thus arises out of the same set of facts that were litigated in arbitration. *See Patton*, 746 A.2d at 870.

 EDCare's claim is thus barred by res judicata because the parties to this suit are in privity with the parties to the arbitration and EDCare's claim arises out of the same cause of action as GSCEP's claim in arbitration.

### B. The *Choharis* Rule

 Another, independent reason exists for us to deny EDCare's claim. Under this court's decision in *Choharis*, a claim in tort "must exist in its own right independent of the contract, and any duty upon which the tort is based must flow from considerations other than the contractual relationship. The tort must stand as a tort even if the contractual relationship did not exist." 961 A.2d at 1089. A tort is independent when "an action for breach of contract would reach none of the damages suffered by the tort." *Id.* Here, EDCare's fraudulent misrepresentation claim is wholly dependent on the CMC Contract, under which EDCare had the right to collect fees from CMC for services provided by GSCEP. Absent the CMC Contract, EDCare would have no claim because DeLisi had no duty independent of the CMC Contract to make any representations about CMC's financial circumstances or ability to make payment. The damages that EDCare seeks as a result of DeLisi's misrepresentations, which caused EDCare "to devote additional resources and funds towards the provision of emergency medicine management services for the Hospital," could have been addressed in an action for breach of contract.

For the foregoing reasons, the judgment of the trial court is

*Affirmed.*