*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

Nos. 12-CV-1692 & 13-CV-686

DERRICK PRICE and IHIP HOP, LLC, APPELLANTS,

V.

INDEPENDENCE FEDERAL SAVINGS BANK, APPELLEE.

Appeals from the Superior Court
of the District of Columbia
(CAR-8890-11)

(Hon. John Ramsey Johnson, Trial Judge)

(Argued March 6, 2014                         Decided February 19, 2015)

*Craig A. Butler* filed a brief for appellants.

*Dale A. Cooter*, with whom *Nelson Deckelbaum* was on the brief, for appellee. After their withdrawal, *Stephen Nichols* entered an appearance for appellee.

Before WASHINGTON, *Chief Judge*, MCLEESE, *Associate Judge*, and KING, *Senior Judge*.

KING, *Senior Judge*: Appellants, Derrick Price and IHip Hop Music, LLC ("the LLC"), appeal from the trial court's order granting a motion to dismiss four counts of their complaint on the basis of res judicata in favor of appellee, Independence Federal Savings Bank ("Independence"). They also challenge the

trial court's order granting Independence's motion to dismiss—treating it as a motion for summary judgment—the remaining counts in their second amended complaint because Price and the LLC were not "consumers" within the meaning of the D.C. Consumer Protection Procedures Act. We affirm.

**I.**

Price owned a mixed-use property (consisting of two residential units and one commercial storefront) at 3223 Georgia Avenue, Northwest. The LLC, of which Price is a member, was the commercial tenant of the property. On August 13, 2007, Price executed a promissory note and deed of trust, refinancing the property by way of a $545,000 loan from Independence. In early 2008, Price sought to negotiate with Independence regarding past due payments.

Independence sent a notice of default to Price on June 9, 2008, for failure to make payments. The notice indicated that Price would have to pay $27,613.31 and, if not cured, Independence would accelerate the loan on June 16. Price did not pay the past-due amounts and Independence accelerated the loan on August 5, 2008, demanding the loan's balance. On September 26, 2008, Independence filed

a notice of intent to foreclose on the property, setting a sale date in November 2008. Price, expressing his desire to avoid foreclosure, tendered two checks to Independence totaling $10,000. Independence conducted a foreclosure sale on the property on November 10, 2008, selling the property to itself for $100,000.

Independence then initiated a landlord-tenant action (LT1) against the LLC for nonpayment of rent on February 18, 2009, obtaining a judgment for possession on July 8, 2009.[1] The LLC redeemed the property on October 19, 2009, by paying Independence $7,900,[2] at which point Independence cancelled the scheduled eviction. Independence sent the LLC a letter on October 20, expressing its desire to gain possession of the property because, pursuant to D.C. Code § 42-522,[3] the LLC was now considered to be a tenant at will following the foreclosure.

_____

[1] Independence also filed a complaint for debt against Price on September 22, 2009, seeking $492,516.80—the deficiency amount that remained after the November 10 foreclosure sale. The trial court dismissed this complaint, however, because the original notice of foreclosure was not served on Price by certified mail as required.

[2] These payments were signed by Price on behalf of the LLC.

[3] "[I]n case of a sale of real estate under mortgage or deed of trust . . . , and a conveyance thereof to the purchaser, the grantor in such mortgage or deed of trust . . . , or those in possession claiming under him, shall be held and construed to be tenants at will . . . ." D.C. Code § 42-522 (2010 Repl.).

Independence initiated a second landlord-tenant action (LT2) against the LLC on April 9, 2010, seeking possession. At a May 3, 2010, hearing, Price appeared as a member of the LLC. The trial court indicated that Price did not have standing to represent the LLC and an attorney needed to be present in order for the case to proceed.[4] The trial court then granted Independence a non-redeemable judgment for possession. At a May 14 hearing to stay the writ of restitution, Price again appeared as a member of the LLC, and the trial court again informed him that he could not appear on the LLC's behalf because he was not an attorney. A similar series of events occurred on May 17.

On November 9, 2011, Price and the LLC filed the present action against Independence. The complaint alleged wrongful foreclosure, breach of contract, breach of good faith and fair dealing, wrongful eviction, predatory lending, and deceptive trade practices. The trial court granted Independence's motion to

---

[4] "No corporation shall appear as a plaintiff in this Branch except through a member in good standing of the Bar of this Court." Super. Ct. L&T R. 9 (b). This court has not addressed whether Rule 9 (b) applies to LLCs. One Superior Court judge has concluded that Rule 9 (b) does not apply to LLCs, but that other provisions preclude a non-lawyer from appearing on behalf of an LLC. *See HB Mgmt., LLC v. Brooks*, No. 04-LT-37313, 2005 WL 225993, at *1–5 (D.C. Super. Ct. Feb. 1, 2005). The parties have not addressed this issue and we need not resolve it in order to decide this case.

dismiss the first four counts of the complaint (wrongful foreclosure, breach of contract, breach of good faith and fair dealing, and wrongful eviction) on September 11, 2012, on the basis of res judicata, reasoning that the LT2 case had resolved those issues and Price and the LLC were privies.  The court granted Price and the LLC leave, however, to amend their predatory lending and deceptive trade practices counts, which they did on January 25, 2013, alleging violations of the Consumer Protection Procedures Act ("CPPA").[5]  Later, however, the trial court

---

[5]  It shall be a violation of this chapter, whether or not any consumer is in fact misled, deceived or damaged thereby, for any person to:

. . .

(r) make or enforce unconscionable terms or provision of sales or leases; in applying this subsection, consideration shall be given to the following, and other factors:

. . .

(3) gross disparity between the price of the property or services sold or leased and the value of the property or services measured by the price at which similar property or services are readily obtainable in transactions by like buyers or lessees;

(4) that the person contracted for or received separate charges for insurance with respect to credit sales with the effect of making the

(continued…)

granted Independence's motion to dismiss the remaining counts, treating the motion as one for summary judgment and finding that Price and the LLC were not "consumers" within the meaning of the CPPA. This appeal followed.

## II.

Price and the LLC argue the trial court erred when it dismissed the first four counts of the complaint on the basis of res judicata, acknowledging that the only issue with the doctrine's application in this case is whether privity exists between Price and the LLC. Although the trial court relied on *Patton v. Klein*, 746 A.2d 866 (D.C. 1999), Price and the LLC argue that *Patton* requires that the trial court rule in their favor because they represent "different interests" and do not share

(…continued)

    sales, considered as a whole, unconscionable; and

    (5) that the person has knowingly taken advantage of the inability of the consumer reasonably to protect his interest by reasons of age, physical or mental infirmities, ignorance, illiteracy, or inability to understand the language of the agreement, or similar factors[.]

D.C. Code § 28-3904 (r)(3)–(5) (2012 Repl.).

"precisely the same legal right," just like the parties in *Patton*. Further, Price and the LLC argue that Price's appearance on behalf of the LLC in the landlord-tenant proceedings did not establish privity because Price was technically prohibited from doing so under court rules.[6] Because Price did not have the ability to control or substantially participate in the LLC's cases, Price and the LLC argue there can be no finding against them as to privity here. They also argue that they were denied due process because Price was not named as a party in the LT2 case and because neither he nor the LLC "had an opportunity to represent their interest before the Landlord Tenant Branch."

Independence responds that the trial court properly applied res judicata to the first four counts of the complaint. Specifically, Independence claims that other jurisdictions follow the rule that "LLCs are in privity with their individual members, especially where the members exercise control over the prior litigation" and urges us to adopt that principle here. With respect to Price and the LLC's due process argument, Independence notes that this issue is raised for the first time on appeal and that, even if the court considers the argument, there was no violation because both Price and the LLC received notice and an opportunity to appear and

---

[6] See *supra* note 4.

contest Independence's claims.

Additionally, Price and the LLC argue that the trial court erred when it determined that they were not "consumers" within the meaning of the CPPA. Citing the purpose of the Act, to protect consumers from a broad spectrum of practices, they argue they can still be consumers with personal motives even if those motives are pecuniary. Price and the LLC also argue that the determinative factor is the nature of the purchaser, not the use of the goods or services purchased. They further contend that Price was a retail borrower and the LLC was a tenant; neither party was engaged in the regular business of owning, managing, or financing commercial properties. The LLC is also a consumer, say Price and the LLC, because the income generated from its business activities as a tenant of the property was used to provide a personal economic benefit to the LLC's members.

Independence maintains that the trial court correctly ruled that Price and the LLC are not consumers within the meaning of the CPPA. Independence notes that there is no established consumer-merchant relationship and Price and the LLC did not establish any legally viable claim under D.C. Code § 28-3904 (r)(3), (r)(4), or (r)(5).

## III.

## A.

We review the trial court's application of res judicata *de novo*. *U.S. Bank, N.A. v. 1905 2nd Street NE, LLC*, 85 A.3d 1284, 1287 (D.C. 2014).

> In determining whether *res judicata* applies, "[w]e consider (1) whether the claim was adjudicated finally in the first action; (2) whether the present claim is the same as the claim which was raised or which might have been raised in the prior proceeding; and (3) whether the party against whom the plea is asserted was a party or in privity with a party in the prior case."

*Calomiris v. Calomiris*, 3 A.3d 1186, 1190 (D.C. 2010) (alteration in original) (quoting *Elwell v. Elwell*, 947 A.2d 1136, 1140 (D.C. 2008)).[7] We previously stated that "[a] privy is one so identified in interest with a party to the former litigation that he or she represents precisely the same legal right in respect to the subject matter of the case." *Smith v. Jenkins*, 562 A.2d 610, 615 (D.C. 1989)

---

[7] Because there is no dispute that the first two prongs of the res judicata determination have been met, we do not address them in this case.

(citing *Jefferson Sch. of Soc. Sci. v. Subversive Activities Control Bd.*, 118 U.S. App. D.C. 2, 9, 331 F.2d 76, 84 (1963)). "Traditional categories of privies include 'those who control an action although not parties to it . . . ; those whose interests are represented by a party to the action . . . ; [and] successors in interest.'" *Patton v. Klein*, 746 A.2d 866, 870 (D.C. 1999) (alterations in original) (quoting *Smith*, 562 A.2d at 615).

In *Taylor v. Sturgell*, the Supreme Court recognized, "the rule against nonparty preclusion is subject to [six categories of] exceptions." 553 U.S. 880, 893 (2008). In discussing *Taylor*, this court previously summarized those exceptions as follows:

> These exceptions may apply when: (1) there is an agreement to be bound by the issues determined in the prior action; (2) certain legal relationships exist between the non-party and the party to the prior judgment (*e.g.*, assignor and assignees, successive property owners, bailor and bailee); (3) there was representation in the prior suit by a party with the same interest (*e.g.*, class action and suits by trustees, guardians and other fiduciaries); (4) the non-party assumed control over the prior litigation; (5) a non-participant in the prior litigation brings an action as the designated representative of a party to the prior action; and (6) there are statutory schemes foreclosing successive litigation when otherwise consistent with due process (*e.g.*, bankruptcy proceedings).

*Franco v. District of Columbia*, 3 A.3d 300, 305-06 (D.C. 2010) (citing *Taylor*, 553 U.S. at 893-95). In *EDCare Management, Inc. v. DeLisi*, citing both *Taylor* and *Franco*, we recognized both parties were privies of parties in a previous case because there was a "pre-existing legal relationship between the person to be bound and a party to the judgment"—EDCare was assignee of another party and DeLisi was the agent of another party. 50 A.3d 448, 451-52 (D.C. 2012). We also noted that, "[a]lthough agents and principals are not ordinarily in privity with each other for purposes of res judicata," privity can exist where the first action "concerned a matter within the agency." *Id.* at 452. It is undisputed that there is a pre-existing legal relationship between Price and the LLC—Price is a member of the LLC. Price and the LLC argue that they were not in privity, however, because they do not share precisely the same legal right—Price is the former owner of the property and the LLC was merely a tenant.

Even if Price and the LLC were correct on that point—which we do not decide—privity can also exist when a non-party has assumed control over the prior litigation. *Taylor*, 553 U.S. at 895. For example, the courts in a significant number of other jurisdictions have held in various circumstances that various

commercial entities were in privity with an affiliated individual. *See, e.g.*, *Fox v. Maulding*, 112 F.3d 453, 459 (10th Cir. 1997) ("A director's close relationship with the corporation will generally establish privity." (internal quotation marks omitted) (quoting *Lowell Staats Mining Co. v. Philadelphia Elec. Co.*, 878 F.2d 1271, 1277 (10th Cir. 1989)); *Higgins v. NMI Enters., Inc.*, Civil Action No. 09-6594, 2012 WL 5997951, at \*10 (E.D. La. Nov. 30, 2012), *reconsideration granted on other grounds*, 2014 WL 28858 (E.D. La. Jan. 2, 2014); *Arlin-Golf, LLC v. Village of Arlington Heights*, No. 09 C 1907, 2010 WL 918071, at \*6 (N.D. Ill. Mar. 9, 2010), *aff'd*, 631 F.3d 818 (7th Cir. 2011); *Napala v. Valley Isle Loan LLC*, Civ. No. 10-00410 ACK-KSC, 2010 WL 464 2025, at \*7 (D. Haw. Nov. 1, 2010); *Western Md. Wireless Connection v. Zini*, 601 F. Supp. 2d 634, 643 (D. Md. 2009); *In re Linc Capital, Inc.*, 310 B.R. 847, 862 (Bankr. N.D. Ill. 2004). Many of those jurisdictions reasoned that privity exists between a commercial entity and an affiliated individual because the affiliated individual controlled the prior litigation. *See Griswold v. Cnty. of Hillsborough*, 598 F.3d 1289, 1293 (11th Cir. 2010); *Kreager v. General Elec. Co.*, 497 F.2d 468, 472 (2d Cir. 1974); *Radovich v. YA Global Invs., L.P.*, Civil Action No. 12-cv-6723 (DMC) (JAD), 2013 WL 4012042, at \*5 (D.N.J. Aug. 5, 2013); *Goodman Ball, Inc. v. Mach II Aviation, Inc.*, No. C 10-01249 WHA, 2010 WL 4807090, at \*5 (N.D. Cal. Nov. 19, 2010)

(quoting *In re Gottheiner*, 703 F.2d 1136, 1140 (9th Cir. 1983)); *Apollo Real Estate Inv. Fund, IV, L.P. v. Gelber*, 935 N.E.2d 963, 973-74 (Ill. App. Ct. 2010); *Balasuriya v. Bemel*, 617 N.W.2d 596, 600 (Minn. Ct. App. 2000); *Keeley & Assocs., Inc. v. Integrity Supply, Inc.*, 696 N.E.2d 618, 621 (Ohio Ct. App. 1997); *Tamily v. General Contracting Corp.*, 620 N.Y.S.2d 506, 509 (App. Div. 1994). We agree with this line of authority and we hold, for the purposes of res judicata in the District of Columbia, that an owner or member who holds himself out as an LLC's representative in connection with litigation is in privity with the LLC with respect to that litigation.[8]

Further, Price appeared as a member of the LLC on multiple occasions during the LT2 case and held himself out as the LLC's representative, although the

---

[8] We observe, however, that other jurisdictions have declined to find privity between LLCs and their members. *See, e.g.*, *McNeil Interests, Inc. v. Quisenberry*, 407 S.W.3d 381, 387–90 (Tex. App. 2013) (refusing to find privity between an LLC and a member); *Collier v. Greenbrier Developers, LLC*, 358 S.W.3d 195, 200–01 (Tenn. Ct. App. 2009) (holding that the sole member of an LLC is not "*ipso facto*" in privity with the LLC). Whether a commercial entity is found to be in privity with an affiliated individual will depend a number of factors, perhaps including the nature of the commercial entity, the relationship between the person and the entity, and the particular legal and factual context in which the issue arises. In this case, we decide only the narrow issue presently before us—in this context, with these facts, whether a member and owner of an LLC is in privity with that LLC when he holds himself out as a representative of the LLC during litigation.

trial court repeatedly took the position that an LLC must be represented by counsel in the District of Columbia.[9] Further, during the course of the foreclosure dispute with Independence, Price wrote checks on the LLC's behalf. See *supra* note 2. For these reasons, we conclude the trial court did not err in finding that res judicata barred the first four counts of Price and the LLC's complaint; therefore, we affirm the grant of Independence's motion to dismiss those counts.

**B.**

We also conclude that the trial court correctly held that the CPPA does not

---

[9] As such, Price and the LLC's due process argument lacks merit. The basic requirement of due process is "the opportunity to be heard at a meaningful time and in a meaningful manner." *City of Los Angeles v. David*, 538 U.S. 715, 717 (2003) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)) (internal quotation marks omitted). To the extent this issue is reviewable, we find no error. *See In re J.W.*, 837 A.2d 40, 47 (D.C. 2003) ("We have said that constitutional claims not made in the trial court are ordinarily unreviewable on appeal. We deviate from this general rule only in exceptional situations and when necessary to prevent a clear miscarriage of justice apparent from the record. To invoke this plain error exception, the appellant must show that the alleged error is obvious and so clearly prejudicial to substantial rights as to jeopardize the very fairness and integrity of the proceeding.") (internal quotation marks and citations omitted). The LLC received notice of the complaint for possession, as did Price based on his appearance before the court as a member of the LLC. Further, the trial court informed Price on multiple occasions that he needed to have an attorney to represent the LLC.

apply in these circumstances.  As we indicated above, "[o]ur review of the trial court's summary judgment decision is *de novo*, and hence, we conduct an independent review of the record, construing it in the light most favorable to the non-moving party." *Saucier v. Countrywide Home Loans*, 64 A.3d 428, 437 (D.C. 2013) (citing *Boyrie v. E & G Prop. Servs.*, 58 A.3d 475, 477 (D.C. 2013)).  The purposes of the CPPA are to:  "(1) assure that a just mechanism exists to remedy all improper trade practices and deter the continuing use of such practices; (2) promote, through effective enforcement, fair business practices throughout the community; and (3) educate consumers to demand high standards and seek proper redress of grievances."  D.C. Code § 28-3901 (b) (2012 Repl.).  The Act "'was designed to police trade practices arising only out of consumer-merchant relationships,' and does not apply to commercial dealings outside the consumer sphere." *Ford v. Chartone, Inc.*, 908 A.2d 72, 81 (D.C. 2006) (citation omitted) (quoting *Howard v. Riggs Nat'l Bank*, 432 A.2d 701, 709 (D.C. 1981)).  Thus, in order to obtain redress under the CPPA, Price and the LLC must be "consumers," defined as "a person who, other than for purposes of resale, does or would purchase, lease (as lessee), or receive consumer goods or services, including as a co-obligor or surety, or does or would otherwise provide the economic demand for a trade practice."  D.C. Code § 28-3901 (a)(2)(A).  "Consumer goods or services"

are those that "[a] person does or would purchase, lease (as lessee), or receive and normally use for personal, household, or family purposes." *Id.* § 28-3901 (a)(2)(B)(i). In rejecting the claim under the CPPA, the trial court determined that Price and the LLC were not "consumers" within the means of the statute. Instead, the court found that the property was commercial because: (1) Price leased part of the property to the LLC, a commercial business; (2) Price lived in Atlanta when he transacted with Independence and did not occupy the property; and (3) tax records listed the property as commercial.

Price and the LLC, however, rely on *Ford v. Chartone* in support of their claim that they were "consumers." In that case, we indicated that the appellant there was still a consumer when he purchased his medical records as part of his efforts to pursue a personal injury action. 908 A.2d 72, 83 (D.C. 2006). It is in *that* context that we stated, "[a] motive may be pecuniary and still be personal." *Id. Ford*, however, actually supports Independence's position, as it goes on to acknowledge that

> the CPPA does not protect merchants in their commercial
> dealings with suppliers or other merchants . . . . The term

> "merchant means a person who does or would sell, *lease (to)*, or transfer, either directly or indirectly, consumer goods or services, or a person who does or would supply the goods or services which are or would be the subject matter of a trade practice."

*Id.* (emphasis added) (internal quotation marks omitted) (citing D.C. Code § 28-3901 (a)(3)). If anything, Price falls within the definition of a "merchant" with respect to the property. Price and the LLC have not shown that Price owned the property for personal, family, or household purposes; instead, the record indicates that Price was living in Atlanta, leasing the property to two residential tenants and the LLC to run a business, and maintaining tax records that listed the property as commercial. *See Edwards v. Ocwen Loan Servicing, LLC*, Case No. 13-cv-709 (RJL), 2014 WL 861996, at *3 (D.D.C. Mar. 5, 2014) (noting that the CPPA did not apply to a borrower's claims when, beyond bare allegations that the property was for personal, family, or household use, she did not live at the property or intend to do so when she refinanced the property).

As we stated in *Adam A. Weschler & Son, Inc. v. Klank*, "[i]f the purchaser is regularly engaged in the business of buying the goods or service in question for later resale to another in the distribution chain, or at retail to the general public,

then a transaction in the course of that business is not within the Act." 561 A.2d 1003, 1005 (D.C. 1989). This is precisely what Price did as owner and landlord of the subject property when he leased it to other individuals and businesses for their use, instead of using the property himself. Utilizing the proceeds of Independence's 2007 loan for the "personal economic benefit to himself and his family" does not make Price a consumer in this context, nor is the LLC a consumer because its members received a personal economic benefit from the company's business activity. Were we to accept Price and the LLC's position, it is unclear what individual or business entity, if any, would be considered anything other than a "consumer," because "income generated from . . . business activities" will always lead to a "personal economic benefit" for someone. We agree with the trial court—Price and the LLC are not "consumers" within the meaning of the CPPA and, as such, there was no genuine issue of material fact and Independence was entitled to judgment as a matter of law.

## IV.

For the foregoing reasons, the trial court's September 11, 2012, order granting Independence's motion to dismiss counts I through IV of the original

complaint and the May 21, 2013, order granting Independence's motion to dismiss the second amended complaint are hereby affirmed.

*So ordered.*